**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **STAR INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIV. ACTION NO. 4:23-cv-4577** |
| | § | |
| **MILITARY HIGHWAY WATER** | § | |
| **SUPPLY CORPORATION** | § | |
| | § | |
| **Defendant.** | § | |

---

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Plaintiff, Star Insurance Company ("Star"), and files this its Original Complaint for Declaratory Judgment against Defendant Military Highway Water Supply Corporation ("MHWSC"), and would respectfully show the Court the following:

### I.   PARTIES

1.      Plaintiff, Star Insurance Company, is a corporation domiciled in Michigan, with its principal place of business in Michigan.  Star is an eligible surplus lines insurer that is admitted to transact business in the State of Texas.

2.      Defendant, Military Highway Water Supply Corporation, is a Texas nonprofit corporation, with its principal places of business in Cameron and Hidalgo Counties.  It may be served with process by serving its registered agent for service of process, Ramon Rosales, Jr., 4000 U.S. Highway 281, Mercedes, Texas 78570.  _Star requests citation at this time_.

## II.     JURISDICTION AND VENUE

3.      The Court has diversity jurisdiction pursuant to 28 U.S.C. 1332(a).  For purposes of diversity of citizenship, Plaintiff Star is a citizen of the State of Michigan.  Defendant MHWSC is a citizen of the State of Texas.  Therefore, the parties are citizens of different states, and complete diversity exists between them.

4.      The amount in controversy, exclusive of interests and costs, exceeds $75,000.  The underlying lawsuit made the basis of this insurance coverage declaratory judgment action includes in excess of five hundred plaintiffs, and states that the amount in controversy exceeds $1,000,000.

5.      Venue is properly maintained in this Court because it is the judicial district in which the litigation made the basis of this declaratory judgment action is pending, because it is the judicial district in which the actions and/or events giving rise to the underlying lawsuit occurred, and because it is the judicial district in which a claim for insurance coverage was made.

## III.     FACTS

### A.     The Underlying Lawsuit

6.      This declaratory judgment action involves insurance coverage for the lawsuit styled *Israel Lopez, et al. v. Military Highway Water Supply Corp.*, Cause No. 2016-DCL-07014, in the 445th Judicial District Court of Cameron County, Texas (the "Underlying Lawsuit").

7.      The Underlying Lawsuit concerns alleged personal injury, property damage, and wrongful deaths from exposure to toxic products and substances.  Specifically, the underlying plaintiffs claim that they own, lease, and/or have constructed homes in Cameron County, Texas along U.S. Highway 281, also known as "Military Highway."  MHWSC supplies water to the underlying plaintiffs at their residences in Cameron County.

8.      The underlying plaintiffs allege that they were injured as a result of exposure to MHWSC's water.  They contend that they received water that was brown/yellow in color, had a distinct malodorous odor, foul taste, and contaminants.  The underlying plaintiffs assert that they were concerned about the water, and notified MHWSC on numerous occasions about the impurities and unknown elements in the water.  MHWSC allegedly assured each complaining customer that the water was safe to consume.  The underlying plaintiffs contend that they relied upon the representation regarding safety, and continued to consume the water.  As a direct result of their continued consumption, however, they claim that they developed multiple bodily ailments.  These ailments include, but are not limited to, typhoid fever, skin rashes, pulmonary maladies, nausea, damages to internal organs, and various cancers. The underlying plaintiffs also assert that the water was corrosive and damaged their plumbing systems, appliances, and the plumbing fixtures connected to residential water systems.

9.      The underlying plaintiffs allege that at all relevant times, MHWSC provided water service to consumers in Cameron County, Texas, including the underlying plaintiffs.  They assert that MHWSC knew for years that high levels of arsenic, tri-halomethanes, and other unhealthy and unsafe contaminants were contained in the substandard water.

10.      In the Underlying Lawsuit, the underlying plaintiffs claim that although the Texas Commission on Environmental Quality has filed 59 administrative complaints against MHWSC since 2005, nothing has changed.  They allege that despite MHWSC's knowledge of the substandard water, it failed to adequately warn them of the dangers of using the water and provide adequate directions regarding how to reduce the risk of illness.  They claim that they, and their children, have consequently been exposed to life-threatening illnesses and have become ill due to their exposure.

11.     The underlying plaintiffs allege that MHWSC violated the Texas Deceptive Trade Practices Act by engaging in an unconscionable course of action and in other respects, committed common law fraud by making material false representations with knowledge of falsity, were negligent and grossly negligent, misrepresented information in the course of a transaction in which it has a pecuniary interest, breached contracts with the underlying plaintiffs, and substantially interfered with the underlying plaintiffs' private use and enjoyment of their property.   They contend that MHWSC violated multiple provisions of the Texas Administrative Code (including, but not limited to, regulatory requirements pertaining to water, inorganic contaminants, organic contaminants, radionuclides, microbial contaminants, disinfectant residuals, surface water treatment, total organic carbon, stage 1 disinfection byproducts, other disinfection byproducts, stage 2 disinfection byproducts, groundwater, regulation of lead and copper, *etc*.) in their failure to deliver water free from contaminants, pollutants and impurities, and such violations proximately caused the underlying plaintiffs' damages.   The underlying plaintiffs also allege that MHWSC's numerous violations of the Texas Administrative Code constitutes negligence per se.   They claim that MHWSC intentionally, negligently, and/or unreasonably interfered with and invaded the underlying plaintiffs' property by permitting contaminants into its water supply, which traveled through MHWSC's service pipes.   The underlying plaintiffs allege that MHWSC is vicariously liable for the acts and omissions of its subcontractors, employees, and agents, and that MHWSC's negligence may be inferred by facts and circumstances such that its culpability is established by the doctrine of *res ipsa loquitor*.   Finally, some of the underlying plaintiffs brought wrongful death and survivorship claims.

12.     The underlying plaintiffs seek to recover actual damages, damages for loss of use, the cost to replace plumbing appliances and fixtures, "benefit of the bargain" damages, the cost of

repairs, remedial costs and/or costs of completion, reasonable and necessary engineering or consulting fees, reasonable expenses of temporary housing, expenses for psychiatric care and monitoring, expenses for psychological care and counseling, the reasonable cost of past and future medical care, the cost of past and future medical monitoring and prevention, damages for loss of companionship, society, and guidance, and damages for loss of earnings, expenses, and support. They claim that MHWSC's alleged false, misleading, and deceptive acts, practices and/or omissions were committed "knowingly" as provided by the DTPA, and that they are entitled to recovery for mental anguish, multiple damages, exemplary damages., and attorneys' fees.

### B.     The Star Primary Policies

13.     Star issued a commercial general liability policy to MHWSC bearing policy number CP0427022, effective for the period from March 1, 2009 to March 1, 2010 (the "2009 Primary Policy").  The 2009 Primary Policy was subsequently renewed under the same policy number for three additional policy periods:

- CP0427022, effective for the period from March 1, 2010 to March 1, 2011 (the "2010 Primary Policy")

- CP0427022, effective for the period from March 1, 2011 to March 1, 2012 (the "2011 Primary Policy")

- CP0427022, effective for the period from March 1, 2012 to March 1, 2013 (the "2012 Primary Policy")

14.     All four of the above-referenced commercial general liability policies contain the same terms and conditions, and are collectively referred to herein as the "Star Primary Policies."

15.     The Star Primary Policies provide general liability coverage with limits of $1,000,000 per occurrence, and $3,000,000 general aggregate.

16.     The Star Primary Policies contain the following insuring agreement (CG 00 01 12 04):

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

      **(1)**     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.**     This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)**     The "bodily injury" or "property damage" occurs during the policy period; . . . .

17.     The Star Primary Policies contain the following pertinent exclusions, which provide that the insurance does not apply to:

a.      **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*\*\*

f.      **Pollution**

(1)      "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"

(a)      At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

(i)      "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii)      "Bodily injury" or "property damage" for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii)      "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b)      At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)      Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i)      Any insured; or

(ii)      Any person or organization for whom you may be

legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.  However, this subparagraph does not apply to:

  **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory

requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a government authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would not have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

18.     The Star Primary Policies contain the following endorsement:

**FUNGI OR BACTERIA EXCLUSION** (CG 21 67 12 04)

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**     The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2.**     **Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a**.     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b**.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are

on, or are contained in, a good or product intended for bodily consumption.

***

**C.**     The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

***

19.     The Star Primary Policies contain the following pertinent definitions:

## SECTION V – DEFINITIONS

***

**3**.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

***

**13**.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

**15**.     "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and wastes.  Wastes includes materials to be recycled, reconditioned or reclaimed.

***

**17**.     "Property damage" means:

**a**.     Physical injury to tangible property, including all resulting use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b**.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

***

C.    **The Star Umbrella Policies**

20.    Star issued a commercial umbrella policy to MHWSC bearing policy number UM0427022, effective for the period from March 1, 2009 to March 1, 2010 (the "2009 Umbrella Policy").  The 2009 Umbrella Policy was subsequently renewed under the same policy number for three additional policy periods:

- UM0427022, effective for the period from March 1, 2010 to March 1, 2011 (the "2010 Umbrella Policy")

- UM0427022, effective for the period from March 1, 2011 to March 1, 2012 (the "2011 Umbrella Policy")

- UM0427022, effective for the period from March 1, 2012 to March 1, 2013 (the "2012 Umbrella Policy")

21.    All four of the above-referenced commercial umbrella policies contain the same terms and conditions, and are collectively referred to herein as the "Star Umbrella Policies."

22.    The Star Umbrella Policies list the Star Primary Policies in their Schedules of Underlying Insurance.  They sit on top of the Star Primary Policies.

23.    The Star Umbrella Policies provide additional liability coverage to MHWSC with limits of $4,000,000 per occurrence, and $4,000,000 general aggregate.  Each of the Star Umbrella Policies contains a $10,000 self-insured retention.

24.    The Star Umbrella Policies contain the following insuring agreement (CU 00 01 12 07):

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1**.    Insuring Agreement

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. . . .

25.    The Star Umbrella Policies contain the following pertinent exclusion, which provides that the insurance does not apply to:

a.    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*\*\*

26.    The Star Umbrella Policies also contain the following endorsement:

**EXCLUSION – LEAD** (45 35 UM 03 06)

This endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM – CU 0001**

The following is added to **2. Exclusions** under **Section I – Coverage A – Bodily Injury and Property Damage** and **Coverage B – Personal and Advertising Injury Liability:**

This insurance does not apply to:

**Lead or Lead Compounds**

"Bodily injury", "property damage", or "personal and advertising injury" arising

out of, resulting from, caused or contributed to by:

(1)     The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

(2)     Any loss, cost or expense to abate, mitigate, remove or dispose of lead, lead compounds or materials containing lead;

(3)     Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts (1) or (2) above;

(4)     Any obligation to share damages with or repay someone else who must pay damages in connection with parts (1), (2) or (3) above.

                                    ***

27.     The Star Umbrella Policies contain the following endorsement:

        **THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

        **TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING, AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION** (CU 21 52 12 05)

        This endorsement modifies insurance provided under the following:

        COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

        Exclusion **i**. under **Paragraph 2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

        **i.     Pollution**

                **(1)**     "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.  This exclusion does not apply to:

                        **(a)**     "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water

for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire unless that "hostile fire" occurred or originated:

**(i)** At a premises, site or location which is or was at any time used by or for any insured or others for the handling, storage disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

For the purposes of this insurance, hostile fire means one that becomes uncontrollable or breaks out from where it is intended to be.

**(2)** "Pollution cost or expense".

\*\*\*

28. Further, the Star Umbrella Policies contain the following endorsement:

**THIS ENDORSEMENT CHANGE THE POLICY.  PLEASE READ IT CAREFULLY.**

**FUNGI OR BACTERIA EXCLUSION** (CU 21 27 12 04)

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to **Paragraph 2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2.** **Exclusions**

This insurance does not apply to

**FUNGI OR BACTERIA**

**a**.     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b**.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

***

**C**.     The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

29.     Finally, the Star Umbrella Policies contain the following condition:

**AMENDMENT OF CONDITIONS ENDORSEMENT – (ANTI-STACKING)** (45 71 UM 11 06)

This endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM – CU 0001**

**I**.     Paragraphs **1**. of **Section III – Limits of Insurance** is replaced with the following:

**1**.    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a**.    Insureds;

    **b**.    Claims made, "suits" brought, or number of vehicles involved;

    **c**.    Persons or organizations making claims or bringing "suits"; or

    **d**.    Premiums paid.

**II**.    The following Condition is added to **Section IV – Conditions**:

**Two Or More Commercial Umbrella Policies Issued By Us**

If this Umbrella policy or any other Umbrella policy issued to you by us, or any company affiliated with us, apply to the same "occurrence" or pollution condition, the maximum Limit of Insurance under all of the Umbrella policy forms shall not exceed the highest applicable Limit of Insurance available under any one Umbrella Policy.

All other policy terms, conditions, definitions and exclusions remain unchanged.

\*\*\*

30.    The Star Umbrella Policies contain the following pertinent definitions:

3.    "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

\*\*\*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

15.    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

16.  "Pollution cost or expense" means any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    b.  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

***

18.  "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

19.  "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20.  "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance".   The self-insured retention does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

***

23.  "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24.  "Underlying insurance" means any policies of insurance listed in the Declarations under Schedule of "underlying insurance".

25.     "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

## IV.     <u>JUSTICIABLE CONTROVERSY</u>

31.     MHWSC has demanded that Star defend and indemnify it in the Underlying Lawsuit.

32.     Star is currently defending MHWSC, subject to a full and complete reservation of its rights.

33.     Star seeks a declaration of its rights, duties, and obligations under the Star Primary Policies and Star Umbrella Policies, if any.

34.     An actual controversy exists between the parties hereto pursuant to 28 U.S.C. § 2201 *et seq*., Chapter 37 of the Texas Civil Practice and Remedies Code, and Rule 57 of the Federal Rules of Civil Procedure.  As a result, this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to the issues herein.  Star seeks a declaration of its rights and obligations, if any.

35.     Neither Star nor any other defendant has sought any other legal action to adjudicate their respective rights involving the insurance policies.

## V.     <u>CAUSES OF ACTION</u>

**COUNT I – DECLARATORY RELIEF**

36.     Star re-alleges and incorporates by reference the allegations found in paragraphs 1 to 35 above.

**A.     <u>THERE IS NO COVERAGE UNDER THE STAR PRIMARY POLICIES AND STAR HAS NO DUTY TO DEFEND</u>**

*1.     The Expected Or Intended Injury Exclusion Precludes Coverage*

37.     The Star Primary Policies preclude coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

38.     The underlying plaintiffs allege that they notified MHWSC on numerous occasions about the impurities and unknown elements in the water.  They contend that MHWSC had received 59 violations from the TCEQ for having levels of arsenic in the water that were outside acceptable parameters.  Nonetheless, the underlying plaintiffs claim that MHSWC assured them that the water was safe to consume.  The underlying plaintiffs allege that they were subsequently injured by the contaminated water, and their property was damaged.

39.     The alleged injuries and damages were so likely as to be expected from MHSWC's standpoint.  As such, Star has no duty under the Star Primary Policies to defend MHSWC in the Underlying Lawsuit.

40.     For the same reason there is no duty to defend, Star could never have a duty to indemnify.

### 2.     *The Pollution Exclusion Precludes Coverage*

41.     The Star Primary Policies exclude coverage for "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."

42.     The underlying plaintiffs allege that MHSWC provided water service to them for a period of years.  They claim that the water MHSWC provided contained high levels of arsenic, tri-halomethanes, and other unhealthy and unsafe contaminants, and that consumption of the water caused them bodily injury and property damage.

43.     The Star Primary Policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and

wastes.  Wastes includes materials to be recycled, reconditioned or reclaimed."

44.     Arsenic, tri-halomethanes, and other unsafe contaminants in the water MHSWC proffered the underlying plaintiffs constitute "pollutants."

45.     The water was allegedly discharged, disbursed, or released from MHSWC's site, and the underlying plaintiffs expressly claim that it was transported through MHSWC's pipes.  As such, the pollution exclusion in the Star Primary Policies bars Star's duty to defend.

46.     For the same reason there is no duty to defend, Star could never have a duty to indemnify.

### 3.     The Fungi Or Bacteria Exclusion Precludes Coverage

47.     The Star Primary Policies exclude coverage for "bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

48.     The alleged "bodily injury" and "property damage" made the basis of the Underlying Lawsuit would not have occurred, in whole or in part, but for the Underlying Plaintiffs' actual or threatened ingestion of, contact with, exposure to, and/or the presence of fungi or bacteria within a building or structure, including its contents.

49.     Star has no duty to defend MHSWC because all of the alleged injuries and damages at issue are precluded by the Fungi or Bacteria Exclusion.

50.     For the same reason there is no duty to defend, Star could never have a duty to indemnify.

**B.      THERE IS NO COVERAGE UNDER THE STAR UMBRELLA POLICIES**

*1.      The Star Umbrella Policies Are Not Triggered*

51.      The Star Umbrella Policies provide that Star will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.

52.      Star does not owe any obligation to pay under any of the Star Umbrella Policies unless and until the Star Primary Policy for the corresponding policy year is exhausted.

53.      Even if any of the Star Umbrella Policies were triggered, insurance provided by the Star Umbrella Policies does not apply.

*2.      The Expected Or Intended Injury Exclusion Precludes Coverage*

54.      The Star Umbrella Policies preclude coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

55.      The underlying plaintiffs allege that they notified MHWSC on numerous occasions about the impurities and unknown elements in the water.  They contend that MHWSC had received 59 violations from the TCEQ for having levels of arsenic in the water that were outside acceptable parameters.  Nonetheless, the underlying plaintiffs claim that MHSWC assured them that the water was safe to consume.  The underlying plaintiffs allege that they were subsequently injured by the contaminated water, and their property was damaged.

56.      The alleged injuries and damages were so likely as to be expected from MHSWC's standpoint.  As such, the Star Umbrella Policies afford no coverage.

*3.      The Lead Exclusion Precludes Coverage*

57.      The Star Umbrella Policies contain an endorsement entitled "Exclusion – Lead" (the "Lead Exclusion"), which precludes coverage, in relevant part, for "'bodily injury', 'property

damage'…arising out of, resulting from, caused or contributed to by: (1) The toxic or pathological properties of lead, lead compounds or lead contained in any materials; (2) Any loss, cost or expense to abate, mitigate, remove or dispose of lead, lead compounds or materials containing lead; (3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts (1) or (2); (4) Any obligation to share damages with or repay someone else who must pay damages in connection with parts (1), (2) or (3)…"

58.     The underlying plaintiffs allege that MHWSC violated multiple provisions of the Texas Administrative Code, including, but not limited to, regulatory requirements pertaining to lead and that such violation(s) proximately caused their damages.

59.     The Lead Exclusion in the Star Umbrella Policies plainly precludes coverage for any of the underlying plaintiffs' claims and damages in connection with lead.

4.     *The Total Pollution Exclusion Precludes Coverage*

60.     The Star Umbrella Policies contain a Total Pollution Exclusion, which precludes coverage for "bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

61.     The Star Umbrella Policies define "pollutants" to mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste."

62.     The underlying plaintiffs allege that they notified MHWSC on numerous occasions about impurities and unknown elements in the water.  They contend that MHWSC had received 59 violations from the TCEQ for having levels of arsenic in the water that were outside acceptable parameters.     The underlying plaintiffs allege that they were subsequently injured by the

contaminated water, and their property was damaged.

63.     Arsenic, tri-halomethanes, and other unsafe containments in the water MHSWC proffered the underlying plaintiffs constitute "pollutants."

64.     The Total Pollution Exclusion in the Star Umbrella Policies precludes coverage for all of the underlying plaintiffs' claims.

*5.     The Fungi Or Bacteria Exclusion Precludes Coverage*

65.     The Fungi Or Bacteria Exclusion contained in each of the Star Umbrella Policies bars coverage for "bodily injury" or "property damage" arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

66.     The alleged "bodily injury" and "property damage" made the basis of the Underlying Lawsuit would not have occurred, in whole or in part, but for the underlying plaintiffs' actual or threatened ingestion of, contact with, exposure to, and/or the presence of fungi or bacteria within a building or structure, including its contents.

67.     All of the alleged injuries and damages at issue are precluded by the Fungi or Bacteria Exclusion.

*6.     The Anti-Stacking Condition Applies*

68.     The Star Umbrella Policies contain an anti-stacking provision which is, or may be, applicable to the Underlying Lawsuit.  It provides that if multiple umbrella policies issued by Star or an affiliated company apply to the same "occurrence" or pollution condition, the maximum

Limit of Insurance under all of the Umbrella policy forms shall not exceed the highest applicable Limit of Insurance available under any one Umbrella Policy.

69.     MHWSC is not entitled to stack coverage in contravention of the Anti-Stacking provision in the Star Umbrella Policies.

**VII.**
**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Star Insurance Company, prays for judgment as follows:

A.     The Star Primary Policies afford no coverage, and Star has no duty to defend and/or indemnify MHWSC in connection with the Underlying Lawsuit, because:

    1.     The Expected Or Intended Injury Exclusion Precludes Coverage;

    2.     The Pollution Exclusion Precludes Coverage;

    3.     The Fungi Or Bacteria Exclusion Precludes Coverage;

B.     The Star Umbrella Policies afford no coverage, and Star has no duty to defend and/or indemnify MHWSC in connection with the Underlying Lawsuit, because:

    1.     The Star Umbrella Policies Are Not Triggered;

    2.     The Expected Or Intended Injury Exclusion Precludes Coverage;

    3.     The Lead Exclusion Precludes Coverage;

    4.     The Total Pollution Exclusion Precludes Coverage;

    5.     The Fungi Or Bacteria Exclusion Precludes Coverage;

    6.     The Anti-Stacking Condition Applies, and MHWSC may not stack coverage;

B.     Such other and further relief, legal or equitable, general or specific, to which Star may show itself to be justly entitled and for which it shall ever pray.

Respectfully Submitted,


By: */s/ Robert  J. Witmeyer*
     **ROBERT J. WITMEYER**
     **Attorney-In-Charge**
     State Bar No. 24091174
     Southern District No. 260115
     Email:  Rob.Witmeyer@cooperscully.com

     **COOPER & SCULLY, P.C.**
     900 Jackson Street, Suite 100
     Dallas, Texas 75202
     Telephone:  (214) 712-9500
     Telecopy:   (214) 712-9540

     **ATTORNEY FOR PLAINTIFF,**
     **STAR INSURANCE COMPANY**